UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| PATRICIA DIANE COLWELL, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Case No. CV609-073 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Claimant Patricia Diane Colwell appeals the Social Security Commissioner's denial of her application for disability insurance benefits. (Doc. 1.) For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

I. **BACKGROUND**

Colwell, a 59-year-old (as of November 19, 2010) former Georgia Pacific payroll coordinator, seeks social security disability and disability insurance benefits due to rheumatoid arthritis, diabetes,

hypothyroidism, hypertension, and sarcoidosis.[1] (Tr. 16, 78, 353, & 363.) She filed her application for benefits on December 22, 2005, alleging that she became disabled on July 1, 2005. (Tr. 14.) Her claims were denied initially and on reconsideration. (Tr. 14, 37-46.) Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), who conducted a hearing on June 30, 2008. (Tr. 350-82.) The ALJ entered an order denying Colwell's benefits applications on August 19, 2008 (Tr. 14-20), and the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 3-5). Colwell then filed a complaint in this Court contending that the ALJ erred in reaching his decision.

## II. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284

---

[1] Sarcoidosis is a "systematic granulomatous disease of unknown cause, especially involving the lungs with resulting fibrosis, but also involving lymph nodes, skin, liver, spleen, eyes, phalangeal bones, and parotid glands." STEDMAN'S MEDICAL DICTIONARY 1571 (26th ed. 1995). In layman's terms, a person's immune system cells form clumps, called granumolomas, in various organs throughout the body.

F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether she has met her burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has

3

not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. *Id.* If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. *Id.* If she cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

## III. ANALYSIS

Colwell claims that the ALJ improperly rejected the opinion of her treating rheumatologist, Dr. Kathy Lynn.[2] (Doc. 10 at 5-9.) In order to frame Colwell's contention, it is first necessary to discuss the ALJ's analysis.

---

[2] Colwell also asserts that the ALJ failed to discuss the opinions of "additional treating physicians." (Doc. 10 at 9.) She does not, however, specify *which* "additional treating physicians" were omitted. It is not the Court's duty to dissect every page of the transcript in order to build a claimant's case. Indeed, in the briefing order, the Court directed claimant to cite directly to pages in the transcript. (Doc. 9 at 1, 4.) She did not do so. Hence, her claim as to "additional treating physicians" will not be conisdered.

4

## A. The ALJ's Determination

At step one of the five-step analysis, the ALJ found that Colwell had not engaged in substantial gainful activity since July 1, 2005. (Tr. 16.) At step two, he found that her "severe" impairments included hypertension with hypertensive heart disease and rheumatoid arthritis. (*Id.*) In his step-two discussion, he noted that claimant's sarcoidosis, hypothyroidism, and diabetes mellitus, type II, "have required minimal or no treatment and have not resulted in any functional limitations." (*Id.*) "These impairments are 'not severe' because the evidence establishes that they only result in a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect or claimant's ability to work." (*Id.*) Claimant admitted at the ALJ's hearing that she "has not had any flare-ups of her sarcoidosis; her hypothyroidism is controlled with medications; and she has no complications from her diabetes and it is controlled except when her RA flares." (*Id.*)

At step three, the ALJ determined that claimant did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1. (Tr. 17.) The ALJ found at step four that claimant maintained "the residual functional capacity to perform medium work in that she can lift/carry 25 pounds frequently and 50 pounds occasionally, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in a workday but with no more than occasional climbing of ladders, ropes, or scaffolds, and she should avoid concentrated exposure to environmental irritants and pollutants (chemicals, dust, fumes, smoke, etc.)." (*Id.*)

As for claimant's allegations of pain, the ALJ noted that while her rheumatoid arthritis could cause the complained-of symptoms, the severity was not in keeping with the objective medical evidence. (Tr. 18.) X-rays showed only mild join narrowing and mild loss of range of motion. (*Id.*) While one exhibit from Dr. Lynn showed "abnormal findings involving shoulders, elbows, wrists, hands, knees, ankles, feet, and spine," that "is the only evidence of any rheumatologic or arthritic problems." (*Id.*) "Dr. Lynn's other records (Exhibit 5F) do not report physical abnormalities." (*Id.*) Consequently, the ALJ discounted Dr. Lynn's opinion indicating that Colwell is disabled and cannot work

and afforded greater weight to the state agency's assessment that she could perform medium exertional work.

Moving on to step four, the ALJ held that claimant was capable of performing her past relevant work as a payroll clerk. (*Id.*) Consequently, he did not need to move on to step five, which shifts the burden to the Commissioner to show whether work exists in the national economy that the claimant is able to perform.

## B. Colwell's Claim

Colwell claims that the ALJ's decision is not based on substantial evidence because the ALJ did not assign the proper weight to the opinion of Dr. Lynn, her treating physician. (Doc. 10 at 5-9.)

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). Here, there is no dispute that Dr. Lynn was a treating and examining

physician. An ALJ, however, may accord more or less weight to a such a source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). That is, the commissioner need not give the physician's opinion controlling weight, nor is the physician's opinion dispositive, since the determination of disability is reserved to the commissioner. *Garred v. Astrue*, 2010 WL 2412128 at * 1 (11th Cir. June 16, 2010). For that matter good cause exists for rejecting a treating physician's findings when that opinion is not supported by the evidence, or the evidence supports a contrary finding. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see Crawford*, 363 F.3d at 1159 ("A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'"). Otherwise, a doctor who has treated a patient for many years and developed a close relationship with that patient may shift roles from objective medical observer to patient advocate.

Here, Dr. Lynn repeatedly asserted that claimant could not return to work. On April 26, 2006, she first noted that Colwell was disabled. (Tr. 154.) Then, on August 30, 2006 during a treatment visit, Lynn wrote "<u>Disabled - Cannot Work</u>" on the consultation form.

(Tr. 152.) Finally, on June 24, 2008, Dr. Lynn noted that Colwell could not afford the more expensive, and presumably more effective, rheumatoid arthritis medication Humira and was disabled "by diffuse disease." (Tr. 338.) The ALJ discounted Dr. Lynn's assessment, however, "because (1) a finding of disability is an issue reserved to the Social Security Administration Commissioner and (2) this opinion is not supported by the objective evidence. . . ." (Tr. 19.)

In discussing the lack of objective evidence, the ALJ noted that Dr. Lynn's treatment records did not report physical abnormalities or present any other evidence of disability until June 24, 2008. (*Id.*) Consequently, he discounted Dr. Lynn's earlier opinions and noted that while it is "quite possible claimant has just started a period of disability," "later evidence of significant continuing abnormalities of 12 consecutive months' actual or expected duration will be required to support a favorable decision." (*Id.*) In other words, Dr. Lynn's opinion was largely unsupported until June 24, 2008, but even crediting the June 24, 2008 assessment, claimant had not shown the requisite 12 months duration to win a partial award of benefits.

Colwell asserts that Dr. Lynn's opinions must be accepted as true, and her case should be reversed for an award of benefits. (Doc. 10 at 6.) The ALJ, however, was justified in discounting Dr. Lynn's opinion, at least as to the pre-June 24, 2008 assessment, which was the first to show serious physical deterioration. (Tr. 338.) He did just that, admitting that Colwell *may* have a claim starting in 2008, but not a claim starting in 2005.[3] Following the June 24, 2008 visit, Dr. Lynn referred claimant to a private functional capacity evaluation. (Tr. 345-49.) The evaluators found Colwell to be entirely unable to work. (Tr. 346.) But again, that examination did not occur until

---

[3] Claimant, without citing to the record or otherwise supporting her argument, contends that the ALJ mischaracterized Dr. Lynn's records and summaries and referenced only selected portions of her records favorable to the outcome. (Doc. 10 at 7.) Because claimant has not clarified and supported her contentions, the Court finds claimant's position untenable. Moreover, claimant's insistence that the ALJ must, in his written opinion, parse through every jot and tittle from every page in the record is contrary to law. All that the ALJ must do is adequately articulate his assessment of the evidence in a way that shows he considered the evidence, then provide a path for his reasoning. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam). His "failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citations omitted); *Randolph v. Astrue*, 291 F. App'x 979, 982 (11th Cir. 2008) ("'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.' *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1557 (11th Cir. 1995))."); *Dyer v. Astrue*, 2009 WL 350637 at *13 (E.D. Mo. Feb. 10, 2009). Here, the ALJ's opinion is more than sufficient in that regard.

October 16, 2008, several years after the 2005 alleged onset and even after the ALJ's August 19, 2008 order denying benefits. (*Id.*)

Having examined the record as it existed at the time, the ALJ reasonably discounted Dr. Lynn's assessment on the basis that there was no pre-2008 *objective* evidence of RA-based degeneration and that all of claimant's other diseases were well controlled through medication.[4] (Tr. 18-19 (citing tr. 324-29 (October 20, 2006 neurological questionnaire showing no functional limitations); tr. 260-267 (non-examining physician's April 5, 2006 residual functional capacity assessment showing no significantly limiting findings).)[5]

Colwell's next argument, that the ALJ improperly weighed the evidence because the *later-acquired* functional capacity assessment

---

[4] As the ALJ discussed, all of Dr. Lynn's notes concerning claimant's disability came *after* the alleged onset date. (Tr. 155 (February 27, 2006); tr. 152 (August 30, 2006); tr. 338 (June 24, 2008).)

[5] Colwell argues that the ALJ cherry-picked his facts from the State residual functional capacity assessment in an effort to avoid discussion of her limitations. (Doc. 10 at 8.) Specifically, the ALJ failed to discuss handling and fingering limitations. (*Id.*) The state evaluator, however, only noted *handling* limitations in the right wrist, not handling *and fingering* limitations. (Tr. 263.) Too, the ALJ referenced the loss of range of motion in claimant's wrists and degeneration of the right hand but agreed with the state examiner that the limitation was not "significantly limiting." (Tr. 18 (citing tr. 267).) Any error arising from the ALJ's failure to explicitly list every detail from the report is harmless.

11

cuts the other way, is a non-starter. (Doc. 17 at 3.) She invites the Court to reweigh the evidence based upon information that was not even before the ALJ. But this Court's review is limited to ascertaining whether substantial evidence supported the ALJ's conclusion. *Crawford*, 363 F.3d at 1158-59. Courts "do not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Garred*, 2010 WL 2412128 at * 1; *Barron v. Sullivan*, 924 F.2d 227, 229-30 (11th Cir. 1991). Thus, so long as the ALJ's ruling rested upon such relevant evidence as a reasonable person would accept as adequate to support a conclusion, the Court *must* affirm, even if the evidence preponderates against the ALJ's findings. *Id.*; *Crawford*, 363 F.3d at 1158-59. Here, as noted *supra*, the ALJ highlighted specific evidence from the record suggesting that claimant's disabilities were not debilitating until after the alleged onset date. That evidence is more than a scintilla, so substantial evidence supports the ALJ's conclusion that Dr. Lynn's pre-June 24, 2008 disability assessment was not due deference. Hence, the ALJ's determination must be respected. *See Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (the Commissioner must accord substantial

or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary).

Next, Colwell claims that the ALJ applied an improper standard in rejecting Dr. Lynn's opinion. (Doc. 14 at 14.) Specifically, the ALJ did not consider all the regulatory factors, including: "(1) the examining relationship, (2) the treatment relationship including the length, nature, and extent of the treatment relationship, (3) supportability or the degree to which the medical sources provide supporting explanation for their opinions, (4) consistency of the opinion with the record as a whole, (5) specialization, and (6) other factors." (Doc. 10 at 8, *citing* 20 C.F.R. § 404.1527.) The ALJ, however, explicitly noted that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527." (Tr. 17.) Claimant has not shown otherwise. The Court is not aware of, and claimant has not provided, any case showing that an ALJ must explicitly reference each factor in his opinion.

Claimant's final argument is the most persuasive but still falls short. She suggests that she should have at least received a partially favorable decision, since the ALJ noted in his assessment that she was

possibly disabled as of June 24, 2008. (Doc. 10 at 9 (citing tr. 19).) The Commissioner apparently overlooked the argument and did not address the matter in his response. (Doc. 16.)

As the ALJ noted in his decision, while Colwell may have been disabled as of June 2008, there remained a question as to whether the disability would be expected to last for a continuous period of not less than 12 months, as required by the applicable regulations. (Tr. 19.) Colwell underwent a functional capacity evaluation on October 16, 2008, *after* the ALJ's decision, which showed further range of motion limitations and arthritic deterioration. (Tr. 347.) The Appeals Council accepted the evidence but denied claimant's request for review on August 14, 2009, nearly a year after the ALJ's August 19, 2008 decision. (Tr. 3.) The Court, then, must determine whether the Appeals Council's decision to uphold the ALJ's decision in light of the new evidence and to deny review was supported by substantial evidence. *See Ingram v. Astrue*, 496 F.3d 1253, 1266-67 (11th Cir. 2007).[6] It was.

---

[6] Since Colwell submitted new evidence for the first time to the Appeals Council, which considered it in denying review, the evidence became part of the

14

The functional capacity evaluation, completed by a physical therapist rather than a medical doctor, provides additional detail as to Colwell's range of motion limitations, grip strength, and gait, but it is not extraordinarily helpful. (Tr. 345-49.) While Dr. Lynn catalogued claimant's range of motion limitations, the assessment went a step further, providing greater detail and offering actual numbers. Still, it is largely cumulative of Dr. Lynn's June 24, 2008 report. Based upon the totality of the record, the Court concludes that the evidence would have had little impact upon the ALJ's disability determination, since it still did not address his key concern -- whether the limitations are expected to last for a period of more than twelve months. The Appeals Council's decision to deny review in light of the new evidence was supported by the record. Hence, it provides no basis for remanding the case. *See Smith*, 272 F. App'x at 802-3 (evidence presented to the Appeals Council that was either cumulative or immaterial offers no basis for remanding a case).

---

administrative record. Accordingly, the Court must determine whether the Appeals Council's denial of review was supported by substantial evidence under sentence 4 of 42 U.S.C. § 405(g). *Ingram*, 496 F.3d at 1267; *Smith v. Astrue*, 272 F. App'x 789, 802-803 (11th Cir. 2008).

## IV. CONCLUSION

Based on the foregoing, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this ___22nd___ day of November, 2010.

_/s/ signature_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA